******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEPHEN A. BROWN *v.* LEO OTAKE ET AL.
(AC 37691)

Sheldon, Keller and Prescott, Js.

*Argued January 5—officially released April 19, 2016*

(Appeal from Superior Court, judicial district of Hartford, Domnarski, J. [motion to strike]; Hon. Richard M. Rittenband, judge trial referee [summary judgment motion; judgment].)

*Devin W. Janosov*, with whom was *Lukas J. Thomas*, for the appellant (plaintiff).

*Jeffrey J. Mirman*, with whom, on the brief, was *Alexa T. Millinger*, for the appellees (defendants).

*Opinion*

PRESCOTT, J. The plaintiff, Stephen A. Brown, appeals from the summary judgment rendered by the trial court in favor of the defendants, Leo Otake and Saint Francis Hospital and Medical Center (hospital).[1] The plaintiff's principal claim on appeal is that the court improperly violated the law of the case doctrine by granting summary judgment in favor of the defendants on all counts of the complaint on the basis of its determination that, as a matter of law, no contract existed between the parties, despite a prior ruling by the court on a motion to strike that suggested that the formation of a contract was immaterial to those counts of the complaint that alleged negligent and intentional misrepresentation and tortious interference with business expectancies (noncontractual counts).[2] We disagree and affirm the judgment of the court.

The record reveals the following undisputed facts and procedural history relevant to our review. The plaintiff was a plastic surgeon who practiced in Hartford and New Britain, and had privileges at the hospital.[3] The plaintiff decided to retire from practice due to physical limitations that began to affect his ability to perform surgeries. Hoping to find someone to purchase his practice, he hired a broker to help him locate a buyer.

The broker contacted Otake about the opportunity to purchase the plaintiff's practice in 2009. At that time, Otake practiced plastic and reconstructive surgery at Yale-New Haven Hospital, commuting there from his home in Westchester County, New York. The plaintiff and Otake began communicating directly in November, 2009, and spoke on and off throughout the first half of 2010, trying to negotiate terms for the sale of the plaintiff's practice to Otake. Although Otake expressed interest in purchasing the plaintiff's practice, he was unsure about relocating to the Hartford area and also was considering other opportunities.

The plaintiff assured Otake that the plaintiff's practice was doing very well and that he would provide letters introducing Otake to his patients. The plaintiff also made clear that he was willing to stay on with the practice in the short term, if Otake bought it, to aid Otake in the transition. The plaintiff, who understood that the hospital was looking to offer a two year stipend to ensure adequate plastic surgery coverage for the hospital, introduced Otake to members of the hospital's surgery department, including the chief of surgery, with the hope that Otake and the hospital could come to a short-term staffing arrangement that would benefit all parties. Ultimately, however, Otake decided not to purchase the plaintiff's practice, and instead took a full-time position that he was offered by the hospital in August, 2010.

In May, 2011, the plaintiff commenced this action against the defendants. According to the plaintiff's initial complaint, he and Otake had reached an agreement about the sale of the plaintiff's practice, and although the plaintiff had performed all of his obligations in accordance with that agreement, he suffered damages as a result of the defendants' conduct. In particular, the plaintiff alleged that he expended considerable time and effort keeping his practice operational during the transition process, and that those efforts were made in reliance on Otake's representation that he would buy the practice. Among the expenses that the plaintiff alleged he incurred in keeping his practice operational were office expenses, salaries, overhead, rent, utilities, supplies, and malpractice insurance. Additionally, the plaintiff alleged that despite having introduced Otake to the hospital as "the plastic and reconstructive surgeon who was purchasing his business and practice," the hospital and Otake secretly had agreed that, instead of offering Otake a two year stipend, the hospital would hire Otake as a full-time employee to enhance the hospital's existing plastic surgery department, which would directly compete with the plaintiff's practice.

The plaintiff's initial complaint contained seven counts. Counts one and six alleged claims against Otake for breach of contract and unjust enrichment; count seven alleged tortious interference with business expectancies against the hospital; and counts two through five alleged, respectively, negligent misrepresentation, intentional misrepresentation, breach of the duty of good faith and fair dealing, and fraudulent concealment against both defendants.

On July 7, 2011, the defendants filed a joint motion to strike all counts of the complaint for failure to set forth sufficient facts to state a cognizable claim. The court, *Domnarski, J.*, rendered a decision on October 14, 2011, granting in part and denying in part the motion to strike.

The court granted the motion to strike as to four counts of the complaint. First, the court reasoned that although the plaintiff had alleged in the complaint that he and Otake had agreed in principle to a sale of the plaintiff's practice to Otake, the plaintiff had failed to plead facts demonstrating that they had come to terms about essential provisions necessary for the formation of a contract, such as a purchase price. The court concluded that this was fatal to the plaintiff's breach of contract count.

Second, the court determined that there was no allegation in the complaint of a contractual relationship between the plaintiff and the hospital. Because the plaintiff had failed to plead facts establishing the existence of a contract between himself and either of the defendants, the court concluded that the plaintiff's

count against them for breach of the duty of good faith and fair dealing failed to state a valid cause of action.

Third, the court concluded that the count alleging fraudulent concealment must be stricken because Connecticut does not recognize an independent cause of action for fraudulent concealment. The court, citing *Zenk-Pinter* v. *Henry J. Showah, DDS, P.C.*, Superior Court, judicial district of Danbury, Docket No. CV-10-6002725 (September 23, 2010) (50 Conn. L. Rptr. 689, 690), explained that "[General Statutes § 52-595] is the codification of the common-law rule that fraudulent concealment is an avoidance of an affirmative defense of the statute of limitations. It gives rise to neither an independent cause of action nor an enhancement of damages."

Fourth, the court concluded that the plaintiff's allegations that his introduction of Otake to the hospital led to the hospital's hiring of Otake and that the plaintiff, therefore, was entitled to compensation were legally insufficient to state a claim against Otake for unjust enrichment. The court reasoned: "While unjust enrichment is a broad doctrine, if such behavior were legally sufficient to state a cause of action, every person who has recommended another for a job or spoke kindly of them to a potential employer without receiving compensation in return could survive a motion to strike on a claim of unjust enrichment."

The court denied the motion to strike with respect to the remaining three counts, concluding that the plaintiff adequately had pleaded facts sufficient to state causes of action sounding in negligent misrepresentation, intentional misrepresentation, and tortious interference. With respect to the tortious interference count, the court suggested that its legal sufficiency did not turn on the existence of an enforceable contract, stating that "[although] the plaintiff has not sufficiently pleaded breach of contract, the plaintiff has pleaded that he was, at the very least, in negotiations with Otake to purchase his practice and business. It was only based on these negotiations that he introduced Otake to the hospital. It is also alleged that he introduced Otake as the surgeon who was buying his practice. Therefore, the hospital is alleged to have been on notice of the beneficial business expectancy, even if it was based on an unenforceable contract. As previously stated, the plaintiff has adequately pleaded that the hospital made misrepresentations to him regarding the purpose of the introduction. And finally, it is alleged that the hospital secretly hired Otake to the detriment of the plaintiff in that any potential deal for Otake to purchase his business was destroyed when Otake was hired as a full-time employee of the hospital. Therefore, the plaintiff has stated a legally sufficient cause of action as to tortious interference . . . ."

The plaintiff filed a revised amended complaint on

November 23, 2011 (operative complaint). Although the plaintiff did not replead those counts asserting unjust enrichment and fraudulent concealment, he repleaded the breach of contract count against Otake[4] and also repleaded the breach of the duty of good faith and fair dealing count, although only against Otake. In sum, the operative complaint contained five counts: count one alleged breach of contract by Otake; count two alleged negligent misrepresentation by both defendants; count three alleged intentional misrepresentation by the defendants; count four alleged that Otake had breached the duty of good faith and fair dealing; and count five asserted a claim of tortious interference with business expectancy against the hospital. The defendants filed an answer to the operative complaint and a special defense alleging that the plaintiff had failed to mitigate his damages.

On November 14, 2014, the defendants filed a motion for summary judgment as to all five counts of the complaint, asserting that there were no material facts in dispute and that the defendants were entitled to judgment as a matter of law. In support of their motion, the defendants submitted a memorandum of law as well as several affidavits and deposition transcripts.[5] In response, the plaintiff filed a two page opposition. He submitted no opposing affidavits or any other documentary proof, nor did he cite to any of the depositions or other documentary evidence submitted by the defendants. The court heard argument on the motion for summary judgment on December 22, 2014.

With respect to the counts for breach of contract and breach of the covenant of good faith and fair dealing, the defendants argued that they had shown through their submissions, including the plaintiff's own deposition testimony, that there was never any meeting of the minds between the plaintiff and Otake regarding the sale of the plaintiff's practice. Without a meeting of the minds, the defendants argued that the parties had not formed a binding contract, and, therefore, that the plaintiff's claims of breach of contract and breach of the covenant of good faith and fair dealing failed as a matter of law. Although the defendants asserted that the lack of a contractual relationship also was fatal to the tortious interference count against the hospital, they also argued that the count failed because there was nothing malicious or tortious about the hospital's offer to Otake of a job, and, thus, the plaintiff had failed to establish the existence of an essential element of the tort of tortious interference. The defendants addressed the two misrepresentation counts together. They argued that neither of the two alleged misrepresentations—Otake's alleged representation that he would purchase the plaintiff's practice and the hospital's alleged representation that it planned to offer Otake a two year stipend—were supported by any evidence in the record. According to the defendants, the affidavits submitted in support of

summary judgment demonstrated that although Otake engaged in negotiations to purchase the plaintiff's practice, he never agreed to do so, and the hospital never represented that it would provide Otake with a stipend in any amount and only offered Otake a position after his negotiations with the plaintiff had ended.

In response to the defendants' arguments, the plaintiff conceded that his claim for breach of contract was not necessarily a strong one, but argued that the purpose of summary judgment was not to prevent weak cases from proceeding to trial and that whether he had reached an enforceable oral agreement with Otake was an issue that should be left for the jury to consider, not decided at summary judgment. In essence, the plaintiff seemed to argue that his allegation in the complaint that an agreement existed was sufficient to prevent summary judgment on both the breach of contract claim and the claim for tortious interference, stating that if he "prevails on the contract claim, then, obviously, there was some business relationship between the parties."[6]

The plaintiff offered no arguments in support of his claims of negligent and intentional misrepresentation. With respect to those counts, the plaintiff's counsel stated as follows: "Now, the other claims, misrepresentation, I don't know that there is stuff specifically in the record to support that at this point, whether or not there would be stuff at trial to support that, but I'm mostly concerned with simply those two counts right now, the breach of contract claim and the tortious interference with contractual relations. And I think both of those are clear. I think the five points of tortious interference are met if you allow a fact finder to determine whether there is a breach of contract claim. And I think that's the standard of the law, and I think that my client should be entitled to a day in court to be able to have a fact finder evaluate that on its merits."

Following argument, the court, *Hon. Richard M. Rittenband*, judge trial referee, indicated that it would "take the papers." The court later rendered a decision granting the motion for summary judgment. The court did not issue a written memorandum of decision "encompass[ing] its conclusion as to each claim of law raised by the parties and the factual basis therefor. . . ." Practice Book § 64-1 (a). Rather, the court's limited analysis was included on the notice granting the motion in its entirety: "A court may interpret a contract as a matter of law, and the court finds that there was clearly no meeting of the minds. The amended complaint shows a purchase price of $200,000, yet [the plaintiff's] deposition cites a $300,000 purchase price. The terms of payment were not agreed upon. . . . [T]he plaintiff's wife and office manager stated in a deposition that in July of 2010 her husband and the defendant, Otake, were still negotiating. Moreover, the agreement

was conditional upon Otake obtaining a stipend from Saint Francis, which never came to pass."

The plaintiff filed a motion to reargue in which he claimed that the court appeared to have granted summary judgment on all counts solely on the basis of its conclusion that there was no contract between the parties. The plaintiff argued that it was not necessary for him to show the existence of an enforceable contract in order to sustain his claim of tortious interference with a business expectancy, and, therefore, the court improperly granted summary judgment on that count. The plaintiff made no argument that summary judgment was inappropriately granted with respect to any of the other counts, including the two misrepresentation counts. The defendants filed an objection to the motion to reargue. The court sustained that objection and denied the motion. This appeal followed.

During the pendency of the appeal, the plaintiff filed a motion for articulation pursuant to Practice Book § 66-5. The plaintiff asked the court to explain how the discussion it included on the notice granting the motion for summary judgment applied with respect to each of the five counts of the operative complaint, and also to articulate the factual and legal basis for denying the plaintiff's motion to reargue. The trial court granted the motion and issued a brief articulation.[7]

With respect to count one, alleging breach of contract, the court stated: "The facts presented to the court showed, as stated in the granting of the motion for summary judgment, that there was no meeting of the minds, the amended complaint shows a purchase price of $200,000, yet [the plaintiff's] deposition cites a $300,000 purchase price. The terms of payment were not agreed upon, and the plaintiff's wife stated that her husband and Otake were still negotiating. Finally, the agreement was conditional upon Otake obtaining a stipend from [the hospital], which never was obtained. Therefore, there is no breach of contract."

Regarding count two, alleging negligent misrepresentation, the court stated: "There were no facts presented that showed negligent representation on the part of these defendants." Similarly, the court articulated as to count three, alleging intentional misrepresentation, that "[t]here were no facts presented that any misrepresentations were made, negligent or false."

The court articulated with respect to count four that, because "there was no meeting of the minds and no breach of contract, there were no facts presented that [Otake] violated the duty of good faith [and fair dealing]."

With respect to count five, alleging tortious interference, the court articulated as follows: "No facts were presented that showed that there was any tortious interference by [the hospital]. [The hospital] had no obliga-

tion to give [Otake] a stipend, and there were no facts presented to show that the failure by [the hospital] to give a stipend was for the purpose of interfering with the contract between [the plaintiff] and [Otake], which, in fact, did not exist. One cannot interfere with something that does not exist." Finally, the court explained that it had denied the motion to reargue because "nothing new was presented that had not yet been considered."[8]

Before turning to our discussion of the plaintiff's claims on appeal, we first set forth the well settled legal principles that guide our review. "The fundamental purpose of summary judgment is preventing unnecessary trials. . . . If a plaintiff is unable to present sufficient evidence in support of an essential element of his cause of action at trial, he cannot prevail as a matter of law. . . . To avert these types of ill-fated cases from advancing to trial, following adequate time for discovery, a plaintiff may properly be called upon at the summary judgment stage to demonstrate that he possesses sufficient counterevidence to raise a genuine issue of material fact as to any, or even all, of the essential elements of his cause of action." (Citations omitted; internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 822–23, 116 A.3d 1195 (2015).

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.[9] . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Footnote added; internal quotation marks omitted.) *Barbee* v. *Sysco Connecticut, LLC*, 156 Conn. App. 813, 817–18, 114 A.3d 944 (2015).

"It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred." (Citation omitted; internal quotation marks omitted.) *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 49, 19 A.3d 215 (2011). Only if the defendant as the moving party

has submitted no evidentiary proof to rebut the allegations in the complaint, or the proof submitted fails to call those allegations into question, may the plaintiff rest upon factual allegations alone. *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009).

"[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Barbee* v. *Sysco Connecticut, LLC*, supra, 156 Conn. App. 818.

The plaintiff claims that the court improperly granted summary judgment on the entire complaint on the basis of its determination that, as a matter of law, no contract existed between the parties. The plaintiff contends that in a prior ruling on the defendants' motion to strike, a different judge had concluded that the formation of a contract was immaterial with respect to the noncontractual counts of the complaint alleging negligent and intentional misrepresentation and tortious interference with business expectancies, and, therefore, the court's decision to grant summary judgment on those counts on the basis of its rationale that no contract existed was improper and violated the law of the case doctrine. We are not persuaded.

We clarify at the outset that the plaintiff does not challenge the court's summary judgment ruling with respect to either the breach of contract count or the count alleging breach of the covenant of good faith and fair dealing, and his attorney conceded as much at oral argument before this court.[10] The plaintiff advances no argument that the court's determination that no contract was ever formed between Otake and the plaintiff provided an improper basis for granting summary judgment on those counts, nor could he properly do so. See *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 638, 804 A.2d 180 (2002) (existence of contract necessary antecedent to any claim for breach of contract, including claim for breach of duty of good faith and fair dealing). Rather, it is only with respect to the noncontractual counts, those alleging negligent misrepresentation, intentional misrepresentation, and tortious interference with business expectancies, that the plaintiff challenges the court's decision to grant summary judgment, arguing that the court's determination that there was no meeting of the minds, and, thus, no contract between Otake and the plaintiff, was not a proper basis for granting summary judgment on those counts. Before turning to a discussion of whether the

court properly granted summary judgment with respect to each of the noncontractual counts, we briefly discuss the law of the case doctrine and why the plaintiff's reliance on that doctrine is misguided in the present case.

"The application of the law of the case doctrine involves a question of law, over which our review is plenary. . . . The law of the case doctrine expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . [When] a matter has previously been ruled [on] interlocutorily, the court . . . may treat that [prior] decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if . . . [a judge] becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Citations omitted; internal quotation marks omitted.) *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 322, 63 A.3d 896 (2013).

"The adoption of a different view of the law by a judge in acting upon a motion for summary judgment than that of his predecessor in considering such a motion or some other pretrial motion is a common illustration of this principle. . . . From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling. . . . In an appeal to this court [in which] views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, the important question is not whether there was a difference but which view was right." (Citations omitted; internal quotation marks omitted.) *Breen* v. *Phelps*, 186 Conn. 86, 100, 439 A.2d 1066 (1982).

For several reasons we will explain, we are unconvinced that the law of the case doctrine is applicable under the circumstances presented. Further, even if it were applicable, the plaintiff has failed to demonstrate that application of the doctrine would mandate a reversal of the court's decision to grant summary judgment in the present case.

First, it appears that the plaintiff reads far too much into Judge Domnarski's prior ruling. The legal issue before Judge Domnarski in deciding the defendants' motion to strike was whether the plaintiff had pleaded

sufficient facts in the complaint to state a proper cause of action. The plaintiff suggests that because the court answered that question in the affirmative with respect to the noncontractual counts, and yet contemporaneously determined that the plaintiff had failed to allege the existence of a contractual relationship essential to stating a cause of action for breach of contract, the court necessarily also must have decided that the existence of a contractual relationship was immaterial to the misrepresentation and tortious interference counts. That particular question of law, however, was not an issue that was actually litigated by the parties or expressly decided by Judge Domnarski in his ruling on the motion to strike. Accordingly, Judge Rittenband's decision cannot be characterized as conflicting with Judge Domnarski's ruling on the motion to strike.[11]

Second, the plaintiff's entire law of the case argument is premised on his assumption that Judge Rittenband granted summary judgment on all counts of the complaint solely on the basis of his determination that, as a matter of law, there was no enforceable contract between Otake and the plaintiff. That assumption, however, is not supported by the record, as evidenced by the court's articulation, which the plaintiff appears to ignore.[12]

Finally, the law of the case doctrine recognizes that a trial judge may, in the exercise of its discretion, choose to reach a contrary conclusion on an issue of law previously decided if the judge is convinced that the prior ruling was wrong or following it would work an injustice. Even if the plaintiff is correct that the law of the case doctrine should have guided Judge Rittenband's summary judgment decision, the plaintiff has failed to analyze whether and in what manner Judge Rittenband abused his discretion in allegedly electing not to follow Judge Domnarski's earlier ruling.

Simply put, although the plaintiff is entitled to challenge the merits of Judge Rittenband's decision to grant summary judgment, he has failed to demonstrate that the law of the case doctrine is implicated here. Having determined that the law of the case doctrine presented no discernible barrier to the court's summary judgment ruling, we turn next to whether the court properly determined that there was an absence of any genuine issue of material fact and that the defendants were entitled to judgment in their favor under applicable principles of substantive law.

We first consider whether the court properly granted summary judgment on the two misrepresentation counts. Although the plaintiff offered no argument at the hearing on the motion for summary judgment with respect to those counts, stating that he was unsure whether there was "stuff specifically in the record to support" them,[13] the plaintiff nonetheless now argues on appeal that the court should have denied summary

judgment because he had alleged sufficient facts in his complaint to support his misrepresentation claims against each of the defendants. We conclude that the plaintiff failed to meet his burden of production in opposing summary judgment and that the court properly rendered judgment on both counts in favor of the defendants.

"To establish liability for negligent misrepresentation, a plaintiff must be able to demonstrate by a preponderance of the evidence: (1) that the defendant *made a misrepresentation of fact* (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." (Emphasis added; internal quotation marks omitted.) *Stuart* v. *Freiberg*, supra, 316 Conn. 821–22. A claim of intentional misrepresentation[14] requires the same elements as negligent misrepresentation except that the plaintiff also must prove that the defendant made the misrepresentation "to induce the other party to act upon it . . . ." (Internal quotation marks omitted.) *Jaser* v. *Fischer*, 65 Conn. App. 349, 358, 783 A.2d 28 (2001). "Although the general rule is that a misrepresentation must relate to an existing or past fact, there are exceptions to this rule, one of which is that a promise to do an act in the future, when coupled with a present intent not to fulfill the promise, is a false representation." *Paiva* v. *Vanech Heights Construction Co.*, 159 Conn. 512, 515, 271 A.2d 69 (1970).

In the operative complaint, the plaintiff alleged two possible representations on which to base his claims of negligent and intentional misrepresentation—one by Otake and one by the hospital. First, Otake allegedly represented that he would purchase the plaintiff's practice. Second, the hospital allegedly represented that it intended to offer a two year stipend to a plastic surgeon who would agree to provide coverage for the hospital.[15] In their motion for summary judgment, the defendants argued that there was no evidence that these alleged representations were ever made, and, therefore, because the plaintiff could not prove an essential element of his misrepresentation counts, they were entitled to judgment as a matter of law.

With respect to Otake's alleged representation that he would purchase the plaintiff's practice, the defendants submitted evidence from which it can be reasonably inferred that no such representation was ever made. In Otake's affidavit, he attests that he had only engaged in negotiations with the plaintiff; he never agreed to buy the plaintiff's practice. He claims that he did not receive the financial information from the plaintiff necessary to make such a preliminary decision until July, 2010, after which he had no further contact with the plaintiff. This fact was supported by the testimony of the plaintiff's wife in her deposition that, on July 17,

2010, she had provided Otake with detailed numbers about income and the costs associated with running the practice. The defendants also offered the deposition testimony of the plaintiff, in which he acknowledged that he and Otake had never agreed on any of the essential terms of a sale, including financing terms. When asked about the allegation in the complaint that the purchase price was to have been $200,000, the plaintiff testified that he believed the price was actually $300,000. The plaintiff's wife confirmed in her deposition that the parties were still in negotiation as of July, 2010. The plaintiff offered no evidence to rebut the evidence submitted by the defendants and simply directed the court to the allegations in his complaint. For example, he failed to submit his own counteraffidavit or any deposition transcript evidencing when Otake allegedly had made this representation.

Similarly, the defendants presented evidence negating the allegation that the hospital had made a misrepresentation about its intention to provide Otake with a two year stipend, something that the plaintiff and Otake had agreed would be necessary in order to make the purchase of the plaintiff's practice a viable opportunity for Otake. According to the affidavits that the defendants submitted from various hospital agents, before it could even consider offering Otake a stipend, the hospital would have had to complete a study, something that was never done. Carolyn Martindale, the hospital's former director of business development, testified that there was no reason to offer a stipend until there was an understanding between the plaintiff and Otake, which never materialized. Again, the plaintiff offered no evidence of his own necessary to create a genuine dispute about the existence of this representation by the hospital.

According to the court's articulation, summary judgment was warranted on the negligent misrepresentation count because "[t]here were no facts presented that showed negligent representation on the part of these defendants." With respect to the count alleging intentional misrepresentation, the court articulated that it granted summary judgment because "[t]here were no facts presented that any misrepresentations were made, negligent or false." On the basis of our review of the record, including the arguments of the parties at summary judgment, we construe the court's ruling as holding that the plaintiff failed to present any evidence rebutting the proof submitted by the defendants showing that the representations on which the plaintiff relies as misrepresentations were never made, thereby establishing a lack of a genuine issue of material fact on an essential element necessary to prevail at trial on either misrepresentation count. That conclusion is legally and logically correct, and supported by the record. Once the defendants presented evidence demonstrating the lack of a genuine issue of material fact regarding the

existence of a misrepresentation of fact, the evidentiary burden shifted to the plaintiff, and he could no longer rely solely upon the allegations in his complaint. To survive summary judgment, the plaintiff needed to marshal some evidence countering that submitted by the defendants, and it was not the court's responsibility to search the evidentiary record provided by the moving party on his behalf. Having failed to present any evidence himself or to reference any portion of the evidence submitted by the defendants, the plaintiff failed to meet his burden. Accordingly, we conclude that the court properly granted summary judgment on the misrepresentation counts as a matter of law.

We turn next to the plaintiff's argument that the court improperly granted summary judgment in favor of the hospital on his claim of tortious interference with business expectancies.

"It is well established that the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." (Internal quotation marks omitted.) *American Diamond Exchange, Inc.* v. *Alpert*, 302 Conn. 494, 510, 28 A.3d 976 (2011). "The plaintiff need not prove that the defendant caused the breach of an actual contract; proof of interference with even an unenforceable promise is enough. . . . A cause of action for tortious interference with a business expectancy requires proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . It is also true, however, that not every act that disturbs a contract or business expectancy is actionable. . . . A defendant is guilty of tortious interference if he has engaged in improper conduct. . . . [T]he plaintiff [is required] to plead and prove at least some improper motive or improper means. . . .

"Stated simply, to substantiate a claim of tortious interference with a business expectancy, there must be evidence that the interference resulted from the defendant's commission of a tort." (Citations omitted; internal quotation marks omitted.) *Biro* v. *Hirsch*, 62 Conn. App. 11, 21, 771 A.2d 129, cert. denied, 256 Conn. 908, 772 A.2d 601 (2001); see *Kopperl* v. *Bain*, 23 F. Supp. 3d 97, 110 (D. Conn. 2014) ("[c]entral to [a claim of tortious interference with business expectancies] is the requirement that to be actionable, the *interference* complained of must be *tortious*" [emphasis in original]).[16]

In the present case, except for the plaintiff's bald allegations in his complaint, there is nothing in the record indicating that the hospital acted fraudulently or with malice when it offered Otake a full-time position, despite having knowledge of the negotiations between

Otake and the plaintiff regarding the sale of the plaintiff's practice. The defendants presented evidence in support of summary judgment that the hospital and Otake did not engage in discussions about full-time employment for Otake until after the hospital believed that the negotiations between the plaintiff and Otake had ended. The defendants submitted evidence that it was the hospital's understanding that no agreement was ever reached between the plaintiff and Otake.

The court, in its articulation, used language suggesting that the lack of a contractual relationship between Otake and the plaintiff was a factor in the court's decision to grant summary judgment. The plaintiff claims that this was error because an enforceable contract is not a necessary element of a claim for tortious interference. The court more generally explained, however, that "[n]o facts were presented that showed that there was any tortious interference by [the hospital]." Read as a whole, the court's articulation of its reasoning focuses less on the lack of a contractual relationship between Otake and the plaintiff than on the plaintiff's failure to present any evidence demonstrating tortious conduct on the part of the hospital or its agents.[17] As with the misrepresentation counts, once the defendants presented evidence demonstrating the lack of a genuine issue of material fact regarding an essential element—namely, that the actions of the hospital were, in some manner, tortious or done with malice—the plaintiff could not rest on the factual allegations in the complaint and needed to provide counteraffidavits or other evidence demonstrating a genuine issue of material fact. Because he failed to produce such evidence, the court properly granted summary judgment on the tortious interference count.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We refer to the defendants individually by name and collectively as the defendants.

[2] The plaintiff raises additional claims that we construe as part and parcel of his principal claim, and which we address as part of that discussion.

[3] The plaintiff shared office space with another doctor, Steven Belinkie, at a medical office building in Hartford that was owned by the hospital and at a New Britain office building in which the plaintiff and Belinkie each had an ownership interest.

[4] The revised breach of contract count was identical to the one the court previously had stricken except that it included the following additional allegation: "[The plaintiff and Otake] agreed that the purchase price for the business and practice would be $200,000."

[5] Specifically, the defendants submitted the depositions of the plaintiff and his wife, who was employed by the practice as both the office manager and a nurse; an affidavit of Otake, attached to which were copies of several correspondences between himself and agents of the hospital, including the hospital's letter offering Otake a position on its staff; an affidavit of Carolyn Martindale, the hospital's former director of business development; an affidavit of Joseph Bisson, the hospital's former vice president of business development; and an affidavit of Jeffrey Steinberg, the former director of the hospital's department of surgery.

[6] The plaintiff in his opposition never discussed the count alleging breach of the covenant of good faith and fair dealing during arguments nor challenged the defendants' suggestion that the viability of that count turned,

like the breach of contract count, on the existence of a contractual agreement between Otake and the plaintiff.

[7] We note that neither party filed a motion for further articulation; see Practice Book § 66-5; or sought review of the court's articulation from this court in accordance with Practice Book § 66-7.

[8] Although the plaintiff asserted as a claim in his preliminary statement of issues that the court abused its discretion by denying his motion to reargue, he did not raise this claim in his appellate brief and, thus, we deem it abandoned. See *Thomas* v. *West Haven*, 249 Conn. 385, 390 n.11, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000).

[9] The plaintiff claims in the present case that, in granting summary judgment, the court failed to view the evidence presented in the light most favorable to him. "The question of whether a trial court has held a party to a less exacting standard of proof than the law requires is a legal one. . . . Accordingly, our review is plenary." (Citation omitted.) *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 126, 981 A.2d 1068 (2009). Although it is axiomatic that "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . [and] must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Citations omitted; internal quotation marks omitted.) *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 591, 715 A.2d 807 (1998). In the absence of any indication that the court applied an incorrect standard, we will assume that the court acted correctly in accordance with the law. See *In re James O.*, 160 Conn. App. 506, 520 n.4, 127 A.3d 375, cert. granted on other grounds, 319 Conn. 956, 125 A.3d 533 (2015).

The court never indicated at the hearing on the motion for summary judgment or in its decision or articulation that it was applying a standard other than one in which it viewed the evidence presented in the light most favorable to the plaintiff as the nonmoving party. Because the plaintiff has failed to demonstrate that the court applied a less favorable standard, we find no merit in his claim to the contrary. Further, even if the trial court applied an incorrect standard, this court, in conducting our own de novo review, has viewed the evidence presented in the light most favorable to the plaintiff and reaches the same conclusion as the trial court, namely, that the defendants are entitled to summary judgment. Any error that the plaintiff assigns to the trial court is, accordingly, immaterial. See *Escourse* v. *100 Taylor Ave., LLC*, 150 Conn. App. 819, 821 n.2, 92 A.3d 1025 (2014).

[10] Accordingly, to the extent that some of the arguments made by the plaintiff in his appellate brief can be construed as challenging the court's decision with respect to those contractual counts, we decline to address their merits.

[11] The plaintiff raises as an additional claim in his appellate brief that Judge Rittenband should have given the plaintiff another opportunity to replead because the defendants' motion for summary judgment challenged the legal sufficiency of the operative complaint and, thus, should have been treated as a motion to strike. See *Larobina* v. *McDonald*, 274 Conn. 394, 400–401, 876 A.2d 522 (2005). We reject that claim, however, because it is evident from reviewing the motion for summary judgment that the defendants were not challenging the legal sufficiency of the plaintiff's allegations, but the lack of evidentiary proof necessary to raise a genuine issue of material fact and avoid summary judgment. Whereas the former must be evaluated by the court on the basis of the factual allegations made in the complaint, the latter requires consideration of the evidentiary basis for those allegations, something the plaintiff failed to provide.

[12] There is little doubt that the court's initial truncated explanation for its decision to grant the defendants' motion for summary judgment as well as the court's ill-advised choice not to issue a memorandum of decision contributed to any confusion by the plaintiff regarding the basis for the court's decision.

[13] We do not consider whether the plaintiff effectively abandoned his misrepresentation counts because that issue was not raised by the defendants on appeal and, thus, was not briefed by the parties.

[14] "[A]t common law, fraudulent misrepresentation and intentional misrepresentation are the same tort." *Kramer* v. *Petisi*, 285 Conn. 674, 684 n.9, 940 A.2d 800 (2008).

[15] Although neither representation appears on its face to relate to an existing or past fact, each arguably could fall within the exception for a

promise to act in the future. Because our resolution of the plaintiff's claim turns on a lack of evidentiary support that either representation occurred, we will assume without deciding that the alleged representations qualify as actionable misrepresentations of fact.

[16] As aptly explained by the District Court in *Kopperl*: "Our relations and expectancies in life are constantly interfered with by others. That is an inevitable consequence of living in a competitive world, among people whose ambitions, hopes or purposes may match or conflict with our own. If we could file a civil action against anyone who interfered with our contractual relations or business expectancies, the courts would have no time to do anything else. The saving limitation, embedded in the common law, is found in the rule that only a tortious interference is actionable." *Kopperl* v. *Bain*, supra, 23 F. Supp. 3d 110.

[17] To the extent any ambiguity remained regarding the meaning of the court's articulation, the plaintiff never filed a motion for review seeking an order from this court requiring the trial court to articulate further. See footnote 7 of this opinion.

———————————————