******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PETER SZYNKOWICZ *v.* LINDA BONAUITO-O’HARA
(AC 38198)

DiPentima, C. J., and Lavine and Pellegrino, Js.

*Submitted on briefs October 19, 2016—officially released January 10, 2017*

(Appeal from Superior Court, judicial district of Waterbury, Zemetis, J. [motion to strike]; Brazzel-Massaro, J. [summary judgment].)

*Steven P. Kulas* filed a brief for the appellant (plaintiff).

*Elizabeth S. Bennett* filed a brief for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Peter Szynkowicz, appeals from the judgment rendered in favor of the defendant, Linda Bonauito-O'Hara, doing business as Linda's Team, William Raveis. The underlying dispute arose when the plaintiff and the seller, Edward Development Company, LLC, entered into a dual agency agreement[1] naming Brenda Hanley, a realtor who worked for the same real estate company as the defendant, to act as their dual agent in connection with locating, purchasing and developing the property known as Lot 7 Meadow Brook Drive in East Haddam. After entering into the dual agency agreement, the plaintiff entered into a real estate contract with the seller to develop a single-family home on the property, which was subsequently cancelled when the seller was unable to complete construction. The plaintiff commenced this action against the defendant, whom the plaintiff alleges was also a party to the dual agency agreement, for the return of his deposited moneys advanced to the seller upon the advice of the defendant. On appeal, the plaintiff claims that the court erred in granting (1) the motion to strike count five of his complaint because he adequately had alleged an action for breach of an oral contract against the defendant, and (2) the motion for summary judgment because genuine issues of material fact exist as to the defendant's liability under counts one, two, three and four of his complaint. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our determination of this appeal. On October 5, 2012, the plaintiff commenced this action against the defendant with a five count complaint. In ruling on the motion to strike, the court, *Zemetis, J.*, succinctly set forth the factual allegations of the complaint: The plaintiff alleged that he "and the defendant entered into a dual agency agreement on May 2, 2008, in connection with the defendant aiding the plaintiff in locating, purchasing and developing a piece of real property known as Lot 7 Meadow Brook Drive, East Haddam, Connecticut . . . . The defendant and its employees knew or should have known that the seller of the property was having financial difficulties when the dual agency agreement was entered into because the defendant was the seller's exclusive broker. The defendant failed to disclose the seller's financial difficulties to the plaintiff, despite the duty to do so. After entering the dual agency agreement, the plaintiff entered into a [purchase agreement] with the seller to develop a single family home on the property. After signing the purchase agreement, the defendant repeatedly represented to the plaintiff that the defendant would be able to obtain financing for the plaintiff and failed to disclose the seller's shaky financial condition. The defendant encouraged the plaintiff [to] remain in the deal after he

had offered to withdraw. Based on his reliance on the defendant's representations that the seller was in good financial condition, the plaintiff advanced money to the seller in connection with the construction project. On November 25, 2008, the [dual agency] agreement was cancelled because the seller was unable to complete construction. The defendant, although having a duty to disclose the seller's financial difficulties, never did so."

The plaintiff's complaint contained five counts. Count one alleged that the defendant's failure to disclose information about the seller's financial difficulty constituted a breach of the defendant's contract with the plaintiff. Count two alleged that the defendant's actions in entering a dual agency agreement, i.e., a contract, with the plaintiff and failing to disclose the seller's financial difficulty constituted a breach of the implied covenant of good faith and fair dealing. Count three alleged that the defendant's actions in representing that she could obtain financing for the plaintiff, encouraging the plaintiff to stay in the deal when he offered to withdraw, and failing to disclose the seller's financial difficulty were fraudulent in connection with her duty to represent the plaintiff. Count four alleged that the defendant's actions in stating that she could obtain financing for the plaintiff, encouraging the plaintiff to stay in the deal when he offered to withdraw and failing to disclose the seller's financial difficulty violated General Statutes § 42-110b, a provision of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Count five alleged that the defendant's actions in failing to secure the purchase and the development of the real property violated an oral agreement between the defendant and the plaintiff.

On April 8, 2013, the defendant filed a motion to strike counts one, two and five on the grounds that the plaintiff had failed to allege facts to support the existence of a contract between himself and the defendant. On July 26, 2013, the court denied the defendant's motion to strike counts one and two, but granted the defendant's motion as to count five. In granting the defendant's motion to strike count five, the court noted that it could not "find that the plaintiff . . . sufficiently pleaded that the defendant breached an oral contract in count five. First, [the] plaintiff has insufficiently alleged the existence of an oral contract because the plaintiff failed to allege facts pertaining to scope or terms of an oral agreement. Additionally, in count five the plaintiff has alleged no specific contractual obligation that has not been met." Accordingly, the court concluded that because "the plaintiff has failed to sufficiently allege facts implying the existence of a privity of contract between the parties and has merely alleged misrepresentations and omissions by the defendant . . . count five has failed to sufficiently allege a breach of a term of that alleged oral contract . . . [and] [t]he defendant's motion to strike count five is granted."

Judgment was subsequently rendered in favor of the defendant on this count.[2] Thereafter, the defendant filed an answer specifically denying the allegation that she had entered into a contract with the plaintiff.

On February 13, 2014, the defendant filed a motion for summary judgment as to counts three and four of the complaint. The plaintiff filed an objection to the defendant's motion for summary judgment. On May 5, 2014, the court denied the motion "without prejudice."

One year later, on February 13, 2015, the defendant filed another motion for summary judgment as to all the remaining counts of the complaint. In its July 16, 2015 memorandum of decision granting the motion for summary judgment, the court, *Brazzel-Massaro, J.,* stated: "[T]he defendant filed a motion for summary judgment as to counts one and two of the plaintiff's complaint on the ground that there [was] no privity of contract between the plaintiff and the defendant. The defendant further [sought] summary judgment as to count three on the ground that it [was] barred by General Statutes § 52-577, and count four on the ground that it [was] barred by General Statutes § 42-110g (f). The defendant filed a memorandum [of law] in support of the motion and the [dual agency agreement], the 'Exclusive Right to Represent Buyer or Tenant Authorization' form, and the partial deposition transcript of the plaintiff. On March 18, 2015, the plaintiff filed an objection and a memorandum [of law] in support of the objection, as well as an affidavit of the plaintiff."

The court further stated: "In the memorandum of law in support of the motion, the defendant argues that summary judgment as to count one and two is proper because there is no privity of contract between the plaintiff and the defendant. In particular, the dual agency agreement on which the plaintiff is basing his claims is actually a form consenting to Brenda Hanley acting as a dual agent, to which the defendant is not a party. The plaintiff counters that the actions of the parties raise factual issues as to whether the defendant was acting on behalf of the plaintiff and that the plaintiff believed at the time that the defendant was acting on his behalf. The defendant further argues that summary judgment should be granted as to count three [and count four] because the plaintiff filed his lawsuit outside the three year statutes of limitations as outlined in [§§ 52-577 and 42-110g (f)] and that the statutes of limitations [are] not tolled. The plaintiff again counters that the statutes of limitations [were] tolled by a continuing course of conduct. The defendant contends in response that the continuing course of conduct doctrine requires the existence of a special relationship between the parties giving rise to a continuing duty and no special relationship exists because there is no privity of contract between the plaintiff and the defendant."

In granting the defendant's motion for summary judg-

ment on counts one and two, the court stated: "The defendant has met her burden of showing that there is no genuine issue of material fact that there [was] no privity of contract between the plaintiff and the defendant [and] [t]he plaintiff has provided no evidence [to rebut this]." In granting the motion for summary judgment on counts three and four, the court also stated that: "The defendant has met her burden of showing that there [was] no genuine issue of material fact that count three and count four are barred by the statutes of limitations under § 52-577 and § 42-110g (f) . . . [and] [t]he plaintiff has provided no evidence to rebut this finding." This appeal followed.

I

We decline to review the plaintiff's claim that the court erred in granting the defendant's motion to strike count five because this claim is inadequately briefed.[3] We first note that the plaintiff has devoted less than one page to his argument on this claim. The plaintiff's analysis of this claim consists of a statement that "[a] review of count [five] of the Plaintiff's complaint, which incorporated by reference the allegation of count [one] of the Plaintiff's complaint, indicates that the Plaintiff adequately alleged an action for a breach of an oral contract against the Defendant." Where a claim is simply asserted but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. See *Bicio* v. *Brewer*, 92 Conn. App. 158, 172, 884 A.2d 12 (2005); see also *Braham* v. *Newbould*, 160 Conn. App. 294, 312 n.15, 124 A.3d 977 (2015) (claim abandoned that was not properly briefed). We conclude that the plaintiff's claim is inadequately briefed and, therefore, we decline to review it.

II

The plaintiff next claims that the court erred in granting the motion for summary judgment because genuine issues of material fact exist regarding counts one, two, three and four of the complaint. Specifically, the plaintiff argues that the court improperly granted summary judgment because (1) there were genuine issues of material fact as to whether the parties were in privity of contract, which is required to establish count one of the plaintiff's complaint, alleging breach of contract, and count two, alleging breach of the covenant of good faith and fair dealing, and (2) he presented sufficient evidence to show the existence of a genuine issue of material fact as to whether the statutes of limitations were tolled by the continuing course of conduct doctrine applicable to count three, alleging fraud, and count four, alleging a CUTPA violation. We disagree.

We begin our analysis by setting forth the well established standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered

forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Capasso* v. *Christmann*, 163 Conn. App. 248, 257, 135 A.3d 733 (2016). "We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Brown* v. *Otake*, 164 Conn. App. 686, 701, 138 A.3d 951 (2016).

## A

We first consider the plaintiff's claim that the court erred in rendering summary judgment on count one, alleging breach of contract, and count two, alleging breach of the covenant of good faith and fair dealing. The plaintiff argues that genuine issues of material fact exist as to whether the parties were in privity of contract. We disagree.

We begin by setting forth the legal principles relevant to the issue before us. "[T]he obligation of contracts is limited to the parties making them, and, ordinarily, only those who are parties to contracts are liable for their breach. . . . In other words, [a] person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms." (Citation omitted; internal quotation marks omitted.) *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 797, 17 A.3d 40 (2011).

"It is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . The covenant of good faith and fair dealing *presupposes that the terms and purpose of the contract are agreed upon* by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . In accordance with these authorities, *the existence of a contract between the parties is a necessary anteced-*

*ent to any claim of breach of the* [covenant] *of good faith and fair dealing.*" (Citations omitted; emphasis in the original; internal quotation marks omitted.) *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 638, 804 A.2d 180 (2002).

In its memorandum of decision, the court concluded that summary judgment was warranted on the breach of contract and breach of the covenant of good faith and fair dealing counts because "[t]he defendant has met her burden of showing that there is no genuine issue of material fact that" the parties were not in privity of contract, i.e., there is no contractual relationship. The court expressly noted that because "[t]he plaintiff has provided no evidence to show that there is a genuine issue of material fact" regarding whether there was privity of contract between the parties, he could not assert a claim for breach of contract against the defendant on the basis of the contract. The court further observed that "[s]ince a duty to act in good faith is dependent on the existence of a contract and there is not contractual privity between the plaintiff and the defendant, the plaintiff also cannot bring a claim for breach of the covenant of good faith and fair dealing against the defendant." In addition, the court emphasized: "[T]he fact that the defendant worked closely with . . . Hanley or aided in the performance of the alleged [dual agency] agreement does not bring the defendant, individually, into contractual privity with the plaintiff . . . [and] [w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Therefore, the plaintiff's subjective belief that the defendant was a party to the alleged [dual agency] agreement does not alter the clear terms naming . . . Hanley, alone, as the single agent to represent both [the] seller and [the plaintiff]." (Citations omitted.)

On appeal, the plaintiff claims that the court improperly concluded that he had failed to provide sufficient evidence to show the existence of a genuine issue of material fact as to whether the parties were in privity of contract because at the time he signed the dual agency agreement, he was under the belief that the defendant was representing him in the real estate transaction. In turn, the defendant argues that the court properly granted her motion for summary judgment because she submitted sufficient evidence to show that there was no genuine issue of material fact that the parties were not in privity of contract, and the plaintiff failed to meet his burden of providing evidentiary support to refute this. We agree with the defendant.

The plaintiff's breach of contract and breach of the covenant of good faith and fair dealing counts indisputably rest on the allegation that the defendant was a party to the dual agency agreement to create the required privity of contract. "Contract obligations are

. . . owed only to the specific individuals named in the contract." (Internal quotation marks omitted.) *Vaccaro* v. *Shell Beach Condominium, Inc.*, 169 Conn. App. 21, 36, A.3d (2016); see also *FCM Group, Inc.* v. *Miller*, supra, 300 Conn. 798 (it is axiomatic that an action "for breach of contract may not be maintained against a person who is not a party to the contract" [internal quotation marks omitted]); see *Bruno* v. *Whipple*, 138 Conn. App. 496, 510, 54 A.3d 184 (2012) ("a person cannot be held liable for breach of the implied covenant of good faith and fair dealing without being a party to a contract").

The defendant's documentation attached to her memorandum of law in support of the motion included a copy of the dual agency agreement, the "Exclusive Right to Represent Buyer or Tenant Authorization" form, and the partial deposition transcript of the plaintiff. The dual agency agreement provides in relevant part that: "[The plaintiff] and [the] Seller having previously consented to William Raveis Real Estate, Inc., acting as dual agents, hereby consent to: Brenda Hanley [sales associate] [a]cting as a single agent represent[ing] both [the plaintiff] and [the] Seller with negotiation of sale of Lot 7 Meadowbrook Estates." According to the terms of the dual agency agreement, the plaintiff consented to Hanley, his real estate agent, and not the defendant, to act as a dual agent on behalf of himself and the seller. The only parties named in the dual agency agreement were the plaintiff, the plaintiff's tenant, the seller and Hanley, all of whom are the only parties to have signed the dual agency agreement.

The dual agency agreement did not purport to bind the defendant nor did it refer to the defendant, who was neither a signatory to the dual agency agreement nor a title holder to the property. The defendant also submitted the "Exclusive Right to Represent Buyer or Tenant Authorization" form, which appoints William Raveis Real Estate as the plaintiff's exclusive real estate Broker. This form was signed by the plaintiff and Hanley acting on behalf of William Raveis Real Estate. The defendant was neither named in nor a signatory to this form. In addition, the defendant offered the partial deposition transcript of the plaintiff, wherein the plaintiff acknowledged that he never had entered into a contract with the defendant, nor was the defendant his real estate agent.[4]

As the court properly concluded, the documentary evidence attached to the defendant's motion for summary judgment demonstrated that there was no genuine issue of material fact that the parties were not in privity of contract, and, therefore, the burden was shifted to the plaintiff to demonstrate that his allegations were supported by at least some proof. See *Marinos* v. *Poirot*, 308 Conn. 706, 715, 66 A.3d 860 (2013). To meet his burden by showing a genuine issue of material fact

existed as to whether the parties were in privity of contract, the plaintiff filed an objection to the motion and an affidavit that purportedly supported the allegations in his complaint.

In his affidavit, the plaintiff averred that at the time he signed the dual agency agreement, he believed that the defendant was in control of the real estate office and would supervise his real estate agent, Hanley; at one meeting, the defendant conducted all negotiations, which concerned the contract dispute between the plaintiff and the seller; the plaintiff's agent had to run everything by the defendant; and the defendant made affirmative representations concerning the seller's financial status to him.[5] In his objection to the motion for summary judgment, the plaintiff argued that, as alleged in his complaint and supported by his affidavit, the circumstances surrounding the signing of the dual agency agreement and the actions of the defendant subsequent to the plaintiff's signing the dual agency agreement raised the same factual issue as to whether the defendant was acting on behalf of the plaintiff in the real estate transaction.[6]

The plaintiff's submissions, however, fail to demonstrate the existence of a genuine issue of material fact as to whether the parties were in privity of contract. "After the [defendant's] submission, the plaintiff's [m]ere assertion of fact became insufficient to establish the existence of a material fact, and, therefore, [could] not refute [the] evidence properly presented to the court by the [defendant]." (Internal quotation marks omitted.) Id. Therefore, the court properly granted summary judgment on these two counts.

B

We next consider whether the court erred in granting the defendant's motion for summary judgment on count three, alleging fraud, and count four, alleging a CUTPA violation. The plaintiff claims that the court improperly granted summary judgment on counts three and four because he presented sufficient evidence to show the existence of a genuine issue of material fact as to whether the statutes of limitations were tolled by the continuing course of conduct doctrine.[7] We disagree.

We begin by setting forth the legal principles relevant to the issue before us. "Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996). With respect to count three, alleging fraud, and count four, alleging a CUTPA violation, the applicable statutes of limitations are three years pursuant to §§ 52-577[8] and 42- 110g (f),[9] respectively. See *Krondes* v. *Norwalk Savings Society*, 53 Conn. App. 102, 113, 728 A.2d 1103 (1999). As a general rule, the statute of limitations begins to run on the date of the act or omission complained of or when the conduct of

the defendant occurs. *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 408, 957 A.2d 836 (2008).

"Nonetheless, [w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. . . . [I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) *Haas* v. *Haas*, 137 Conn. App. 424, 433, 48 A.3d 713 (2012).

The plaintiff claims that the court erred in failing to consider the evidence presented in his affidavit that supports his contention that the wrong committed by the defendant consisted of a continuing course of conduct, which tolled the statutes of limitations until he discovered the true facts of the seller's financial situation. The wrong alleged by the plaintiff in counts three and four arises from statements of the defendant that she could obtain financing for the plaintiff, encouraging the plaintiff to stay in the deal when he expressed a desire to withdraw and failing to disclose the seller's financial difficulty. We are not persuaded by the plaintiff's claim.

In concluding that counts three and four were barred by the applicable three year statutes of limitations, the court expressly noted: "In his deposition transcript, the plaintiff admits that the last time he spoke to the defendant was in a meeting in July of 2008. The plaintiff failed to provide any evidence showing that he had contact with the defendant after the meeting in July, 2008." Also there was "no allegation in the complaint nor [was] there any evidence provided by the plaintiff that the defendant committed some wrongful act after July, 2008." "Based on these undisputed facts, the tortious conduct must have occurred in or before July, 2008. The latest the plaintiff could have brought a fraud claim and a CUTPA claim against the defendant, therefore, was in July, 2011. The plaintiff did not file this action until October 5, 2012, more than a year outside the three year statutes of limitations."

In considering whether the statutes of limitations were tolled by the continuing course of conduct doctrine, we agree with the court that the defendant made the required showing that the parties were not in privity

of contract.[10] We also agree with the court's conclusion that there was "no evidence of a special relationship between the plaintiff and the defendant that would toll the statutes of limitations under the continuing course of conduct doctrine."[11] In the absence of a special relationship between the parties, the statutes of limitations were not tolled by the continuing course of conduct doctrine. Accordingly, counts three and four were barred by the three year statutes of limitations. We, therefore, conclude that the court properly granted summary judgment on these two counts.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Pursuant to the website for the Department of Consumer Protection: "If a real estate agent working on the sale of a particular home also represents a client who might be interested in buying that home, by law, the agent must provide both the seller and the potential buyer with a 'Dual Agency Consent Agreement' form to sign." Department of Consumer Protection, "Dual Agency," (last modified April 12, 2012), available at http://www.ct.gov/dcp/cwp/view.asp?q=502404 (last visited December 29, 2016); see also Regs., Conn. State Agencies § 20–325d–2 (b) (i) ("[a] real estate broker or real estate salesperson, when acting as a dual agent, shall make a written disclosure of dual agency to all parties by using the dual agency consent agreement").

[2] After the plaintiff did not file a new pleading, the defendant filed a motion for judgment requesting that judgment be rendered in her favor upon the stricken fifth count of the complaint pursuant to Practice Book § 10-44. On September 8, 2015, the court, *Brazzel-Massaro, J.*, granted the defendant's motion for judgment.

[3] We note with approval the trial court's determination that count five failed to set forth sufficiently a breach of contract action because it "merely alleged that '[t]he actions of the [d]efendant' constituted a breach of the oral contract. Count five, therefore, included no allegation specifying what provision of the oral contract was violated." As established by our case law, "[m]ere conclusions of law, without factual support, are not enough to survive a motion to strike." *Keller* v. *Beckenstein*, 117 Conn. App. 550, 565, 979 A.2d 1055, cert. denied, 294 Conn. 913, 983 A.2d 274 (2009).

[4] The following exchange occurred between the plaintiff and the defendant's counsel at the plaintiff's deposition:

"Q. . . . Did you ever enter into a contract with [the defendant]?

"A. In light of you right now today going over this with me, her name is not on here, so I don't have a contract with [the defendant], based on these two documents.

* * *

"Q. But we agreed before that you don't actually have a contract with [the defendant]?

"A. Right. We agreed after you brought to my attention [that the defendant's] name is not on there, therefore, I wouldn't have a contract with [the defendant]."

[5] Specifically, the plaintiff asserts that the defendant contacted the plaintiff to persuade him to finance the property through a construction loan. After declining to take out a construction loan, the plaintiff asked the defendant if the seller had sufficient resources to complete the project and the defendant replied that the seller had no financial issues. In reliance on the defendant's statement, the plaintiff advanced moneys and materials to the seller. Shortly thereafter, the seller failed to complete the contract and caused the plaintiff to lose all the moneys and materials he had advanced to the seller. The plaintiff contends, therefore, that the defendant's affirmative actions imposed an obligation to keep the plaintiff informed of the seller's financial situation.

[6] As discussed previously, the plaintiff identified two actions of the defendant to support his contention that the parties were in privity of contract. First, the court found that, at the time the plaintiff signed the contract, he believed that "the defendant was in control of the real estate office, in control of the agent that represented the plaintiff, and that the defendant was also acting on behalf of the plaintiff." Next, the plaintiff argues that the actions of the defendant, in conducting negotiations at one meeting that

concerned the contract dispute between the plaintiff and the seller and the fact that the plaintiff's agent had to run everything by the defendant, raised factual issues as to whether the defendant was acting on behalf of the plaintiff.

[7] The plaintiff does not claim that the continuing course of conduct doctrine applies due to some later wrongful conduct related to the initial wrongful act or omission. Therefore, we limit our review to whether the court properly granted summary judgment in concluding that the statutes of limitations were not tolled by the continuing course of conduct doctrine because there was no special relationship between the parties. *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 662, 127 A.3d 257 (2015).

[8] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[9] General Statutes § 42-110g (f) provides: "An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."

[10] As best as we can discern, all of the plaintiff's claims as to the tolling of the statutes of limitations rest on a theory that a continuing duty arose from the special relationship between the parties, thus creating a privity of contract between the parties. We have concluded in part II A of this opinion that the court properly determined that there was no genuine issue of material fact as to whether privity of contract existed between the plaintiff and the defendant.

[11] To the extent that the plaintiff referenced other claims that he and the defendant were in a special relationship, his brief does not support this contention. "It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. Assignments of error which are merely mentioned but not briefed beyond a mere statement of the claim will be deemed abandoned and will not be reviewed by this court." (Citation omitted; internal quotation marks omitted.) *Lucarelli* v. *Freedom of Information Commission*, 136 Conn. App. 405, 407 n.1, 46 A.3d 937, cert. denied, 307 Conn. 907, 53 A.3d 222 (2012). Accordingly, to the extent that the plaintiff has inadequately attempted to challenge the court's determination that no special relationship existed between the plaintiff and the defendant that would toll the statutes of limitations under the continuing course of conduct doctrine, we deem such claims abandoned and decline to review them on appeal.

---