******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MICHAEL GERRISH *v.* PAUL HAMMICK ET AL.
(AC 41759)

DiPentima, C. J., and Prescott and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages for, inter alia, defamation and tortious interference, in connection with a statement made by the defendant W to the plaintiff's employer, Q. The plaintiff, formerly a sergeant with a town police department, retired and took a position as a public safety officer with Q. Prior to the plaintiff's retirement, he was accused of insubordination and neglect of duty. The chief of the police department, the defendant H, ordered W to conduct an internal affairs investigation into the accusations but the plaintiff retired before the investigation had been completed and a decision could be made whether to discipline him. Q decided to arm certain of its public safety officers, including former police officers, who were able to provide a letter of good standing to Q. K, an investigator for Q, asked W whether the plaintiff would ever be able to receive a letter of good standing from the department, to which W responded "no." The plaintiff's employment was therefore terminated by Q. The trial court denied W's motion for summary judgment but thereafter granted W's motion to reargue and, after reconsidering its ruling, granted W's motion for summary judgment and the plaintiff appealed to this court, claiming that the trial court improperly granted the motion to reargue and the motion for summary judgment. *Held*:

1. The trial court did not abuse its discretion in granting W's motion to reargue; W asserted that the court made several errors, including that it overlooked certain evidence or misapprehended facts in denying his motion for summary judgment and, thus, the court was well within its discretion to grant the motion to reargue and reevaluate its decision.

2. The trial court properly granted summary judgment in favor of the defendants on the plaintiff's claims of defamation and tortious interference: there was no genuine issue of material fact that W's statement to K was substantially true, as he submitted evidence, namely, the affidavit of H, who averred that the plaintiff did not leave the department in good standing and that he had declined to provide the plaintiff with a letter of good standing, a decision which the evidence demonstrated was within his sole discretion as chief to make, and, after W met his burden of demonstrating that there was no genuine issue of material fact that his statement was substantially true, the plaintiff failed to proffer any evidence demonstrating the existence of such an issue; moreover, as defamation was the tort underlying the plaintiff's tortious interference claim, the tortious interference claim failed as a matter of law because there was no genuine issue of material fact that the alleged defamatory statement underlying the tortious interference claim was substantially true and, therefore, there was no evidence that W's alleged interference resulted from the commission of a tort.

Argued February 13—officially released July 7, 2020

*Procedural History*

Action to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. A. Susan Peck*, judge trial referee, denied in part the defendants' motion for summary judgment; thereafter, the trial court granted the defendants' motion to reargue; subsequently, the court granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Justin Sargis*, for the appellant (plaintiff).

*Kristan M. Maccini*, for the appellee (defendant Matthew Willauer).

*Opinion*

PRESCOTT, J. This is a tort action brought by the plaintiff, Michael Gerrish, against the defendant Matthew Willauer seeking to recover damages for injuries that he claims to have sustained as a result of an allegedly defamatory statement made by the defendant to the plaintiff's former employer, Quinnipiac University (Quinnipiac).[1] The plaintiff appeals from the trial court's granting of summary judgment in favor of the defendant. On appeal, the plaintiff claims that the trial court, which initially had denied the defendant's motion for summary judgment, improperly granted (1) the defendant's motion to reargue and (2) upon reconsideration, the defendant's motion for summary judgment as to the defamation and tortious interference counts of his complaint. We disagree with both claims and, therefore, affirm the judgment of the trial court.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. The plaintiff worked as a police officer for the Bloomfield Police Department (department) from February, 1993 until June 1, 2012, when he retired with the rank of sergeant.[2] Prior to retiring from the department, a department lieutenant accused the plaintiff of insubordination and neglect of duty and requested that he be investigated. After reviewing the request for an investigation, Paul Hammick, as chief of the department, ordered the defendant, who was a lieutenant and commander of the professional standards division of the department, to conduct an internal affairs investigation of the accusations made against the plaintiff. Before the investigation could be completed and before a decision could be made on whether to discipline the plaintiff, the plaintiff announced that he was retiring from the department.

Shortly after retiring from the department, the plaintiff began working for Quinnipiac as a public safety officer in October, 2012. In 2014, Quinnipiac decided that it would arm certain public safety officers, including former police officers like the plaintiff. To become an armed officer, officers needed to satisfy certain criteria, including "retir[ing] in good standing from their prior department and provid[ing] a letter of good standing" to Quinnipiac.

In determining whether the plaintiff was qualified to become an armed officer, Quinnipiac sought information from the department, including whether the plaintiff had retired from the department in good standing. Department policy defines "good standing"[3] and gives the chief of the department the sole discretion to determine whether a department officer retired in good standing.[4] Quinnipiac investigator Karoline Keith conducted a background investigation of the plaintiff,

which included investigating whether the department would issue the plaintiff a letter of good standing. When Keith asked the defendant whether the plaintiff would ever be able to obtain a letter of good standing from the department, the defendant responded, "no" (defendant's statement to Keith).[5] Indeed, Hammick had determined, at some point after the plaintiff announced that he was retiring from the department, that the plaintiff had not left the department in good standing and thus would not be able to receive a letter of good standing. Because the defendant could not receive a letter of good standing from the department, as communicated to Keith by the defendant, Quinnipiac terminated his employment on August 19, 2014.

The plaintiff commenced this action on August 16, 2016. The complaint alleged that the defendant was liable for, among other things, defamation and tortious interference. See footnote 1 of this opinion. The defendant denied the allegations in his answer and set forth special defenses in which he stated, among other things, that the plaintiff had failed to state claims for which relief could be granted with respect to both counts.

On October 2, 2017, the defendant moved for summary judgment on all counts of the plaintiff's complaint.[6] With respect to the defamation count, the defendant, in his motion for summary judgment and memorandum of law in support thereof, stated that the plaintiff's defamation claim failed as a matter of law because the defendant's statement to Keith—that the plaintiff could not obtain a letter of good standing from the department—was substantially true. Regarding the tortious interference count, the defendant stated that this claim must fail "as a matter of law, because there exists no genuine issue of material fact that he did not provide any false information or, otherwise, improperly disclose information to Quinnipiac representatives concerning the plaintiff." In essence, the defendant asserted that the plaintiff's tortious interference claim must fail as a matter of law because there was no evidence in the record demonstrating that the defendant committed defamation, which was the tort underlying the tortious interference claim.

On March 12, 2018, the court denied the defendant's motion for summary judgment with respect to the defamation and tortious interference counts. In its memorandum of decision, the court set forth its reasoning for denying the defendant's motion for summary judgment on these counts. Regarding the defamation count, the court determined that whether the defendant's statement to Keith was true was a question of fact for the jury "because it is unclear whether the plaintiff would ever receive a letter of good standing." With respect to the tortious interference count, the court concluded that "there [was] a genuine issue of material fact as to whether [the defendant's] conduct was tor-

tious." Specifically, the court stated that, "[b]ased on [the] evidence, a trier of fact could conclude [that the defendant] acted tortiously in either of two ways. First, he could have misrepresented whether the plaintiff would ever get a letter of good standing as he may have known that only Hammick, [as the chief of the department], could make that determination. Alternatively, he could have intentionally interfered in the plaintiff's employment without justification because, upon learning about Keith's investigation, he sought to make the plaintiff suffer an adverse employment action by ensuring [that] Quinnipiac would never obtain a letter of good standing from the [department]. Such conduct would qualify as malicious and, thus, a tortious act. Whether such conduct is malicious is for the trier of fact to decide." (Footnote omitted.) The court, therefore, denied the defendant's motion for summary judgment on the defamation and tortious interference counts.

In response to the court's denial of his motion for summary judgment on these counts, the defendant, on April 2, 2018, moved for the court to reconsider this decision. First, the defendant argued that that the court incorrectly had concluded that the plaintiff's defamation claim did not fail as a matter of law. In support of this argument, the defendant asserted that the court had arrived at its incorrect conclusion because it had determined that there was a genuine issue of material fact as to the truthfulness of the defendant's statement to Keith that the plaintiff could not obtain a letter of good standing, even though "the uncontroverted evidence [before the court was] that the plaintiff was not provided with a letter of good standing and retirement badge when he left the . . . [d]epartment in May of 2012; nor in June of 2014, when he sought [a letter of good standing] for a position at Quinnipiac . . . nor [was he provided with a letter of good standing] at any subsequent time. Thus, [the defendant's] response of '[n]o' to [Keith] in response to her question to the effect of whether the plaintiff would be able to get a letter of good standing was substantially true." (Footnote omitted.) Thus, the defendant asserted that, because the defendant's statement to Keith was substantially true based on the uncontested evidence before the trial court, the plaintiff's defamation claim failed as a matter of law.

In his motion to reargue, the defendant also argued that the court improperly denied his motion for summary judgment on the tortious interference count. The defendant asserted that, in doing so, "the court . . . misapprehend[ed] or overlook[ed]" the underlying tort upon which his tortious interference claim was based. The defendant pointed to the plaintiff's complaint, which states that "[t]he plaintiff's claim for tortious interference . . . is based upon [the] plaintiff's allegation that [the defendant] 'falsely communicated to Quin-

nipiac . . . that [the] plaintiff was not entitled to retirement identification and falsely stated that he was found to have committed misconduct at the time of his retirement.' " Thus, according to the defendant, "the [plaintiff's tortious interference] claim [was] based upon the underlying tort of defamation." In denying the defendant's motion for summary judgment on this count, however, the court "conclude[d] that a trier of fact could find that [the defendant] is liable either for the underlying tort of fraudulent misrepresentation or intentional interference," even though "[n]either tort is [pleaded] in the plaintiff's [c]omplaint nor can either be inferred from the allegations set forth."

In response to the defendant's motion to reargue, the court ordered the plaintiff to file a response to the defendant's motion by April 27, 2018, which the plaintiff did. On May 1, 2018, the court granted the defendant's motion to reargue its ruling on the motion for summary judgment because the defendant "raise[d] controlling principles of law and possible misapprehension of facts by the court to warrant reargument." In light of the court's granting the defendant's motion to reargue, both parties submitted supplemental memoranda in support of and opposition to summary judgment on the defamation and tortious interference counts.

On May 31, 2018, the court, after reargument and reconsideration, granted the defendant's motion for summary judgment on the defamation and tortious interference counts and, accordingly, vacated its March 12, 2018 memorandum of decision on the motion. In its revised memorandum of decision, the court set forth its reasoning in support of its granting summary judgment in favor of the defendant on both counts. With respect to the defamation count, the court concluded that "the [defendant] . . . met [his] burden of showing an absence of a genuine issue of material fact that no defamatory statement was made by [the defendant] to Quinnipiac." In arriving at this conclusion, the court determined that there was no genuine issue of material fact regarding the substantial truth of the defendant's statement to Keith. Indeed, the statement was substantially true, according to the court, because Hammick, as the chief of the department, had "previously determined that the plaintiff had not retired in good standing and was [therefore] ineligible" to receive documentation stating that he left the department in good standing. Thus, the court concluded that, "because [the defendant's] statement [was] substantially true and truth is an affirmative defense to defamation, [the defendant] is entitled to summary judgment as to [the defamation] count . . . ."

The court also concluded that the defendant was entitled to summary judgment as to the tortious interference count. In arriving at this conclusion, the court agreed with the defendant that the tort underlying the

plaintiff's tortious interference claim was defamation. Moreover, having determined that "there [was] insufficient evidence that [the defendant] committed [the] underlying tort" of defamation, the court concluded that the plaintiff's tortious interference claim failed as a matter of law, entitling the defendant to summary judgment on that count. This appeal followed.

I

The plaintiff first claims that the trial court abused its discretion in granting the defendant's motion to reargue because "it was unreasonable for the trial court to [conclude] that it had misapprehended any facts" or overlooked any controlling principles of law in its original decision on the defendant's motion for summary judgment. We disagree.

Before addressing the merits of the plaintiff's claim, we first set forth our standard of review of a trial court's decision on a motion to reargue, as well as well established legal principles concerning these motions. Importantly, "[t]he granting of a motion for reconsideration and reargument is within the sound discretion of the court." (Internal quotation marks omitted.) *Ray* v. *Ray*, 177 Conn. App. 544, 574, 173 A.3d 464 (2017). Accordingly, "we review a court's decision on [a] motion [to reargue] for an abuse of discretion." *Priore* v. *Haig*, 196 Conn. App. 675, 685,    A.3d    (2020). "[A]s with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did. . . . In addition, where a motion is addressed to the discretion of the court, the burden of proving an abuse of that discretion rests with the appellant." (Internal quotation marks omitted.) *Gibbs* v. *Spinner*, 103 Conn. App. 502, 507, 930 A.2d 53 (2007).[7]

Turning to the present case, the trial court, in granting the defendant's motion to reargue, determined that the defendant had "raise[d] controlling principles of law and possible misapprehension of facts by the court to warrant reargument." This court repeatedly has stated that "[a] motion to reargue is proper either when its purpose is to direct the court's attention to a case or legal principle that the court has overlooked or when the movant seeks to correct a misapprehension of facts." *Benedetto* v. *Dietze & Associates, LLC*, 159 Conn. App. 874, 879, 125 A.3d 536, cert. denied, 320 Conn. 901, 127 A.3d 185 (2015); see also *Marquand* v. *Administrator, Unemployment Compensation Act*, 124 Conn. App. 75, 80, 3 A.3d 172 (2010) (trial court did not abuse its discretion in granting defendant's motion to reargue when, in that motion, defendant "argued that the court's prior ruling failed to give the appropriate weight to the strict statutory standards for appeals, and the long line of case law in support of that view" (internal quotation marks omitted)), cert. denied, 300 Conn. 923, 15 A.3d

630 (2011).

Indeed, in the present case, the defendant, in his motion to reargue, raised several errors that he claimed that the trial court made in its March 12, 2018 decision on his motion for summary judgment. First, the defendant asserted that the court relied on the wrong statement to determine whether to grant his motion for summary judgment on the defamation count. Indeed, the defendant pointed out that, in its March 12, 2018 memorandum of decision, the court determined that the defendant told Keith "that the plaintiff would never get a letter of good standing." The defendant asserted, however, that "[t]he undisputed fact . . . as documented in Keith's report submitted as [an] exhibit . . . in support of [the defendant's motion for] summary judgment is that Keith asked [the defendant] if [the plaintiff] 'would ever be able to obtain a letter of good standing from the . . . [d]epartment and he replied to her, '[n]o.' "

Second, the defendant asserted that the court misapprehended whether the plaintiff would be able to receive a letter of good standing from the department, which, according to the defendant, was critical to the court's deciding whether to grant his motion for summary judgment on the defamation count. Indeed, as the defendant noted, the court, in its March 12, 2018 memorandum of decision, stated that "it [was] unclear whether the plaintiff would ever receive a letter of good standing." The defendant stated, however, that, in arriving at this conclusion, the court must have overlooked "the uncontroverted evidence [before the court] that the plaintiff was not provided with a letter of good standing and retirement badge when he left the . . . [d]epartment in May of 2012; nor in June of 2014, when he sought [a letter of good standing] for a position at Quinnipiac . . . nor [was he provided with a letter of good standing] at any subsequent time."

With respect to the tortious interference claim, the defendant asserted that the court incorrectly determined that misrepresentation or intentional interference were the torts underlying this claim. Rather, the defendant contended that, based on what the plaintiff alleged in his complaint, defamation was the tort underlying the tortious interference claim.

Having been made aware of these potential errors that it made in its March 12, 2018 memorandum of decision on the defendant's motion for summary judgment, the trial court was well within its discretion to order reargument on the defendant's motion for summary judgment and, in doing so, to reevaluate its prior denial of the motion. See *Benedetto* v. *Dietze & Associates, LLC*, supra, 159 Conn. App. 879; *Marquand* v. *Administrator, Unemployment Compensation Act*, supra, 124 Conn. App. 80. Thus, we conclude that the trial court did not abuse its discretion in granting the

defendant's motion to reargue.

## II

The plaintiff next claims that, even if the trial court properly granted the defendant's motion to reargue, it improperly granted the defendant's motion for summary judgment on his claims of defamation and tortious interference against the defendant. We disagree.

Before analyzing each part of the plaintiff's claim, we first set forth our well established standard of review of a trial court's granting a motion for summary judgment. See *Kusy* v. *Norwich*, 192 Conn. App. 171, 175, 217 A.3d 31, cert. denied, 333 Conn. 931, 218 A.3d 71 (2019). "On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . [O]ur review is plenary and we must decide whether the [trial court's] conclusions are legally and logically correct and find support in the facts that appear on the record. . . .

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *Streifel* v. *Bulkley*, 195 Conn. App. 294, 299–300, 224 A.3d 539, cert. denied, 335 Conn. 911, A.3d (2020).

## A

The plaintiff first argues that the court improperly granted summary judgment in favor of the defendant on the defamation count because there was a genuine issue of material fact as to whether the defendant's statement to Keith was substantially true. We are not

persuaded.

"A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . ." (Internal quotation marks omitted.) *NetScout Systems, Inc.* v. *Gartner, Inc.*, 334 Conn. 396, 410, 223 A.3d 37 (2020). "At common law, [t]o establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Internal quotation marks omitted.) Id.

"[F]or a claim of defamation to be actionable, the statement [at issue] must be false . . . ." (Internal quotation marks omitted.) *Gleason* v. *Smolinski*, 319 Conn. 394, 431, 125 A.3d 920 (2015). In other words, a defendant cannot be held liable for defamation if the statement at issue is substantially true. See *Goodrich* v. *Waterbury Republican-American, Inc.*,188 Conn. 107, 112–13, 448 A.2d 1317 (1982).

Moreover, "[c]ontrary to the [common-law] rule that required the defendant to establish the literal truth of the precise statement made, the modern rule is that only substantial proof need be shown to constitute the justification. . . . [Thus] [i]t is not necessary for the defendant to prove the truth of every word of the libel. If he succeeds in proving that the main charge, or gist, of the libel is true, he need not justify statements or comments which do not add to the sting of the charge or introduce any matter by itself actionable." (Citations omitted; internal quotation marks omitted.) Id. Importantly, if a defendant moves for summary judgment on a defamation count and there exists no genuine issue of material of fact as to whether the alleged defamatory statement is substantially true, then it is appropriate for the trial court to enter summary judgment in favor of the defendant. See *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313,315 n.4, 318, 321–22, 477 A.2d 1005 (1984) (affirming trial court's granting summary judgment in favor of defendant on libel count because trial court correctly concluded that defendant's alleged libelous statements were substantially true); *Mercer* v. *Cosley*, 110 Conn. App. 283, 303–305, 955 A.2d 550 (2008) (affirming trial court's rendering summary judgment in favor of defendant after having "conclude[d] that the [alleged defamatory] statements were true, either substantially or literally").

In support of his argument that there was a genuine issue of material fact as to whether the defendant's statement to Keith was substantially true, the plaintiff, in his appellate brief, stated that Hammick's deposition testimony about when he determined whether the plain-

tiff had left the department in good standing contradicted what he averred in a subsequent affidavit. In his affidavit, which the defendant proffered in support of his motion for summary judgment, Hammick stated that, "[a]t the time that [the plaintiff] resigned, he continued to be under investigation . . . . Based upon my review of the facts and evidence of the internal affairs investigation, along with [the plaintiff's] decision to resign from his position while the investigation was ongoing, I determined that he did not leave the department in good standing. . . . As a result, I made the determination not to provide [the plaintiff] with a retirement badge and identification card upon his resignation. . . . For the same reasons, I declined to provide him with a letter of good standing when he subsequently requested one."

During his deposition, Hammick was shown a May 21, 2012 e-mail from a town employee notifying him that the plaintiff was not returning to work for the department, effective immediately, and was retiring as of June 1, 2012.[8] Hammick was also shown his response to this e-mail. The plaintiff's counsel then asked Hammick if, at the time he responded, he had decided whether the plaintiff had left the department in good standing. Hammick responded, "I don't believe I had made that decision yet." In light of this alleged contradiction between the averments that Hammick made in his affidavit and his deposition testimony, the plaintiff contends that there was a genuine issue of material fact as to whether the defendant's statement to Keith was substantially true.

This contention is flawed, however, because the portion of Hammick's deposition testimony to which the plaintiff directs our attention only supports a conclusion that Hammick had not decided whether the plaintiff had left the department in good standing *at the time he replied* to the May 21, 2012 e-mail from the town employee notifying him that the plaintiff was retiring from the department. It does not, however, contradict what Hammick stated in his affidavit: that sometime after the plaintiff announced that he was retiring from the department, he determined that the plaintiff did not leave the department in good standing and that he declined the plaintiff's request for a letter of good standing when the plaintiff later requested one. Indeed, in the same exchange during the deposition to which the plaintiff directs our attention, the plaintiff's counsel asked whether Hammick "g[a]ve [the plaintiff] a letter of good standing subsequent to" his responding to the May 21, 2012 e-mail from the town employee, to which Hammick responded, "I did not."

Moreover, after the defendant met his burden, the plaintiff did not proffer any evidence demonstrating a genuine issue of material fact as to whether the defendant's statement to Keith was substantially true. In sup-

port of his motion for summary judgment, and in furtherance of his assertion that his statement to Keith was substantially true, the defendant proffered Hammick's affidavit, in which Hammick averred that the plaintiff did not leave the department in good standing and that he declined to provide the plaintiff with a letter of good standing. In addition, both parties proffered the department policy stating that good standing determinations are made at the discretion of the chief of the department. See footnote 4 of this opinion. Importantly, at oral argument, the plaintiff conceded, and our independent review of the record confirms, that there was no evidence in the record demonstrating that the plaintiff could obtain a letter of good standing from the department. In light of the uncontested averment by Hammick that he had decided that the plaintiff would not receive a letter of good standing from the department—a decision that was undisputedly within his sole discretion to make[9]—the trial court properly determined that there was no genuine issue of material fact as to whether the defendant's statement to Keith was substantially true. See *Kusy* v. *Norwich*, supra, 192 Conn. App. 182 (stating that "upon a proper burden shifting, [the nonmoving party must] proffer . . . evidence in opposition to a motion for summary judgment" that raises genuine issue of material fact or else court should grant motion for summary judgment). Because there was no genuine issue of material fact as to whether the defendant's statement to Keith was substantially true, we conclude that the court properly granted summary judgment in favor of the defendant on the defamation count. See *Strada* v. *Connecticut Newspapers, Inc.*, supra, 193 Conn. 322; *Mercer* v. *Cosley*, supra, 110 Conn. App. 303–305.

B

The plaintiff next argues that the trial court's granting of the defendant's motion for summary judgment on the tortious interference count was improper because there was a genuine issue of material fact as to whether the defendant's alleged interference with his employment relationship with Quinnipiac was tortious. Specifically, he argues that "there [was] a genuine [issue] of material fact as to whether [the defendant] misrepresented that the plaintiff would never receive a letter of good standing," resulting in Quinnipiac terminating his employment as a public safety officer. We are not persuaded.

Before addressing the plaintiff's argument, we first set forth well settled principles concerning tortious interference. Our Supreme Court has stated that "[a] claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the

interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct." (Internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *CALCO Construction & Development Co.*, 318 Conn. 847, 864, 124 A.3d 847 (2015).

With respect to the fourth element of a claim for tortious interference—whether the interference was tortious—this court has stated that, "to substantiate a claim of tortious interference with a business expectancy, there must be evidence that the interference resulted from the defendant's commission of a tort." (Internal quotation marks omitted.) *Benchmark Municipal Tax Services, Ltd.* v. *Greenwood Manor, LLC*, 194 Conn. App. 432, 440, 221 A.3d 501 (2019). Moreover, in cases in which a defendant moves for summary judgment on a tortious interference count and "present[s] evidence demonstrating the lack of a genuine issue of material fact regarding an essential element [of a claim of tortious interference] the plaintiff [can no longer] rest on the factual allegations in the complaint and [must] provide counteraffidavits or other evidence demonstrating a genuine issue of material fact." *Brown* v. *Otake*, 164 Conn. App. 686, 711–12, 138 A.3d 951 (2016). If the plaintiff, as the nonmoving party, fails to do this, then the court should grant summary judgment in favor of the defendant on the tortious interference count. See id., 712.

In support of his argument that the court improperly granted summary judgment in favor of the defendant on the tortious interference count, the plaintiff asserts that there was a genuine issue of material fact as to whether the defendant's statement to Keith misrepresented the plaintiff's ability to obtain a letter of good standing from the department. In support of this assertion, the plaintiff contends that Hammick had not yet determined whether he left the department in good standing when the defendant made his statement to Keith or, in the alternative, even if Hammick had determined that the plaintiff did not leave the department in good standing by the time that the defendant made this statement, the defendant was unaware of such a determination having been made.

Before addressing the plaintiff's arguments, it is important that we first note that the trial court, in its May 31, 2018 memorandum of decision, correctly determined that defamation was the tort underlying the plaintiff's allegation that the defendant tortiously interfered with his employment relationship with Quinnipiac. Indeed, the plaintiff's complaint alleges that, "[o]n August 19, 2014, the [defendant] communicated false and *defamatory* information to [the] plaintiff's employers at Quinnipiac . . . . [The defendant] . . . falsely communicated to Quinnipiac . . . that [the] plaintiff was not entitled to retirement identification and falsely

stated that he was found to have committed misconduct at the time of his retirement. . . . As a result of the false and defamatory statements by [the defendant] Quinnipiac . . . was induced to fire [the] plaintiff on August 19, 2014." (Emphasis added.)

Because we concluded in part II A of this opinion that the plaintiff's defamation claim fails as a matter of law because the defendant's statement to Keith was substantially true, his claim that the court improperly granted the defendant's motion for summary judgment on the tortious interference count does not warrant substantial discussion. See *Benchmark Municipal Tax Services, Ltd.* v. *Greenwood Manor, LLC*, supra, 194 Conn. App. 440. Indeed, the plaintiff proffered no evidence rebutting the defendant's evidence that his statement to Keith was substantially true and, at oral argument, admitted as much.[10] Moreover, whether the defendant knew that Hammick had determined that the plaintiff would not receive a letter of good standing is of no consequence to our determination that the defendant's statement to Keith was not defamatory as a matter of law because it has no bearing on whether the statement was substantially true. Therefore, because the plaintiff failed to proffer evidence rebutting the defendant's evidence demonstrating that there was no genuine issue of material fact as to whether the defendant's conduct was tortious—namely, there was no genuine issue of material fact as to whether the statement he made to Keith was substantially true and thus not defamatory—we conclude that the court properly granted summary judgment in favor of the defendant on the tortious interference count.[11] See *Brown* v. *Otake*, supra, 164 Conn. App. 712.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff's complaint contained five counts, alleging that the defendants, Paul Hammick, chief of the Bloomfield Police Department, Matthew Willauer, a lieutenant and commander of the professional standards division of the Bloomfield Police Department, and the town of Bloomfield, were liable to the plaintiff for tortious interference, breach of implied contract, defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress. The trial court granted summary judgment in favor of all three defendants on all five counts of the complaint. On appeal, however, the plaintiff only challenges the court's granting of summary judgment on the tortious interference and defamation counts with respect to Willauer. Thus, all references to the defendant in this opinion are to Willauer.

[2] See footnote 8 of this opinion for a discussion about a discrepancy in the record over the date on which the defendant retired from the department.

[3] Department policy defines "[g]ood standing" in relevant part as "retirement or resignation that was . . . not the result of or avoidance of, any current or past disciplinary or punitive action, work performance contract, or criminal matter . . . ." Bloomfield Police Dept., Manual of Policy and Procedure (Rev. September 25, 2006) vol. 2.

[4] Department policy states in relevant part: "The issuance of a retirement identification card and badge *is at the discretion* of the [c]hief of [the department]. In general, [s]worn [o]fficers who meet the criteria listed [in this policy] are eligible to receive a retirement badge and identification card, as a token of appreciation from the department." (Emphasis added; internal quotation marks omitted.) Bloomfield Police Dept., Manual of Policy and Procedure (Rev. September 25, 2006) vol. 2. One of the criteria for receiving

a retirement badge and identification card is that the officer retired or resigned in "good standing," as defined in the policy. See footnote 3 of this opinion.

[5] In his complaint, the plaintiff does not explicitly state which statement of the defendant's was defamatory. The plaintiff more generally alleges in his complaint that the defendant "falsely communicated to Quinnipiac . . . that [the] plaintiff was not entitled to retirement identification and falsely stated that he was found to have committed misconduct at the time of his retirement."

The court, in its May 31, 2018 memorandum of decision on the defendant's motion for summary judgment, determined that the defendant's response of "no" to Keith's question of whether the plaintiff would ever be able to obtain a letter of good standing from the department was the statement underlying the plaintiff's claims of defamation and tortious interference. Moreover, at oral argument, the plaintiff reaffirmed that this statement by the defendant was the allegedly defamatory statement underlying his claims against the defendant.

[6] On October 3, 2017, the plaintiff filed a motion for summary judgment on all counts of his complaint. The court, however, denied this motion on all counts. On appeal, the plaintiff does not challenge the court's denial of his motion for summary judgment.

[7] In his appellate brief, the plaintiff made two other arguments in support of his claim that the court improperly granted the defendant's motion to reargue. First, the plaintiff argued that the court improperly considered the motion to reargue because it was filed more than twenty days after the court denied the defendant's motion for summary judgment and thus was untimely. See Practice Book § 11-12 (a). At oral argument, however, the plaintiff withdrew this part of his claim pertaining to the timeliness of the court's granting of the defendant's motion to reargue.

Second, the plaintiff argues that, in granting the defendant's motion to reargue, the court improperly considered the defendant's argument that his statement to Keith was substantially true and thus was neither defamatory nor constituted tortious interference as a matter of law. The plaintiff asserts that considering this argument was improper because the defendant "failed to raise or brief this argument in [his] original argument for summary judgment . . . and [thus] should have been deemed abandoned." The defendant, however, did argue in his motion for summary judgment and the memorandum of law in support thereof that the plaintiff's defamation claim should fail as a matter of law because his statement to Keith was substantially true. Indeed, the defendant stated the following in his October 2, 2017 memorandum of law in support of summary judgment: "With regard to the [defamation] claim directed toward [the defendant], [the defendant] simply responded '[n]o' to . . . Keith upon her asking him whether the plaintiff would ever be provided a letter of good standing from the [department]. [This statement] is not false but rather is *substantially true*." (Emphasis added; internal quotation marks omitted.) Moreover, in the same memorandum, the defendant argued that the plaintiff's tortious interference claim failed as a matter of law because "[he] simply responded *truthfully* to Quinnipiac University's investigator's inquiry . . . ." (Emphasis added.) Thus, the plaintiff's argument is unavailing.

[8] In the plaintiff's complaint, he alleged that he retired from the department on June 1, 2012. In his affidavit and in the statement of the facts that he submitted in opposition to the defendant's motion for summary judgment, however, the plaintiff and his counsel aver that the plaintiff retired on May 21, 2012. An exchange between the plaintiff's counsel and Hammick during Hammick's deposition appears to clarify this discrepancy. Indeed, this exchange supports a conclusion that the plaintiff notified the town that he would not be returning on May 21, 2012, and that he intended to begin collecting his retirement benefit on June 1, 2012. This exchange, in relevant part, is as follows:

"Q. I'm showing you what's marked [e]xhibit 17, which is a[n] e-mail trail starting with an e-mail from Cindy Coville to you dated May 21—yeah, May 21, 2012. Have you ever seen that before?

"A. I—I remember seeing this and gathering information for disclosure, yes.

"Q. Okay. And Cindy is the director of Human Resources; right?

"A. Yes.

* * *

"Q. And she said [the plaintiff] submitted his letter of resignation effective today and his intent to collect his retirement benefit—I'm sorry, retirement

beginning June [1], 2012; right?

"A. That's correct, that's what it says.

"Q. And then is that your response above?

"A. It appears to be, yes.

\* \* \*

"Q. Well, you—you didn't give him a letter of good standing subsequent to this e-mail; right?

"A. I did not.

"Q. At the time that you wrote this e-mail to Cindy Coville, had you already decided that [the plaintiff] would not leave in good standing?

"A. I don't believe I had made that decision yet.

"Q. Okay. Did you communicate to anyone at that time, in May [21] or thereabouts, that you had determined that [the plaintiff] would not be leaving in good standing?

"A. I don't believe I communicated that with anyone.

"Q. So at the time that [the plaintiff]—that you were notified that [the plaintiff] was resigning and collecting his retirement benefits, you didn't make a determination that his service would be—would not be in good standing?

\* \* \*

"A. I don't recall making that determination at that time.

"Q. So you didn't tell [the plaintiff] at the time that he was retiring here that he was retiring not in good standing; right?

"A. I didn't have a conversation with [the plaintiff]."

[9] In the plaintiff's statement of facts in dispute, the plaintiff's attorney denies that "[t]he issuance of a retirement badge, identification card and/ or letter of good standing to a retired [department] officer is at the sole discretion of the chief . . . ." Instead, he avers that "[t]he issuance [of a letter of good standing] is subject to [department policy] which Hammick did not consistently apply."

In effect, the plaintiff's counsel avers that Hammick improperly applied the criteria to determine whether to issue the plaintiff a letter of good standing that is stated in the department policy pertaining to "good standing" determinations. This, however, is a separate issue from whether it was within Hammick's discretion to make such determinations and to issue "good standing" letters. The plaintiff provided no evidence disputing the policy that both he and the defendant proffered, which stated that the issuance of documentation showing that an officer left the department in good standing was within the chief's discretion. Moreover, at oral argument before this court, the plaintiff admitted that the decision to provide him with a letter of good standing was solely within the province of the chief of the department. Thus, Hammick's discretion to issue such documentation is undisputed for purposes of this appeal.

[10] Indeed, the plaintiff, at oral argument, stated that, if the defendant's statement to Keith was substantially true, then the statement was "not necessarily tortious."

[11] The plaintiff argues that the court improperly granted summary judgment because he proffered evidence that the defendant acted with malice, which, he contends, created a genuine issue of material fact as to whether the defendant's interference with his employment relationship with Quinnipiac was tortious. We need not address this argument, however, because we conclude that the plaintiff failed to proffer evidence that the defendant's interference resulted from his commission of a tort; namely, in this case, defamation. Because the plaintiff failed to proffer this evidence, his tortious interference claim fails as a matter of law. See *Benchmark Municipal Tax Services, Ltd.* v. *Greenwood Manor, LLC*, supra, 194 Conn. App. 440; *Brown* v. *Otake*, supra, 164 Conn. App. 712.